# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2698

_____

William Pilger; James Brown; Kerman Copeland; Craig Davey; Eugene Hall; Michael Henderson; Lawrence Luebrecht; Donald Riley; Gary Stinson; Stanley Stinson; Presley Stoneking; Garold Woodley; Ronald Wyrick

*Plaintiffs - Appellants*

v.

William T. Sweeney, Administrator for the Board of Trustees of the Plumbers and Pipefitters; Plumbers and Pipefitters National Pension Fund; Board of Trustees of the Plumbers and Pipefitters National Pension Fund

*Defendants - Appellees*

_____

Appeal from the United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 9, 2013
Filed: August 8, 2013

_____

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS,[1] District Judge.

_____

PHILLIPS, District Judge.

------

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

Plaintiffs are 13 retired union plumbers who were members of the former Iowa Local 212. Plaintiffs receive retirement benefits from the Plumbers and Pipefitters National Pension Fund ("PPNPF"). Defendants are the PPNPF, the PPNPF's Board of Trustees, and the Board's Administrator (collectively, "Defendants").

In 2009, Defendants realized that, for a number of years, they had paid Plaintiffs excess retirement benefits. Defendants reduced Plaintiffs' monthly benefit payments to the correct amounts, and then began to recoup the previous overpayments through withholding. Plaintiffs filed this lawsuit to challenge Defendants' actions. Plaintiffs allege three counts under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. The district court[2] granted Defendants summary judgment on each count. Plaintiffs appeal. We affirm.

I.

This case arises from a labor union's merger of three Iowa local affiliates. The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("United Association") is a large international labor union, and it is affiliated with local labor unions across the United States and Canada. United Association operates the PPNPF. The PPNPF is a defined-benefit pension fund. More than 4,000 employers pay contributions into the PPNPF, and it provides benefits to some 42,000 retirees. The PPNPF's Board and its Administrator manage the PPNPF.

In 1998, United Association began merging its local affiliates. As is relevant here, it sought to merge Iowa Locals 66, 125, and 212. Plaintiffs were members of

_____

[2]The Honorable Charles R. Wolle, Senior United States District Judge for the Southern District of Iowa.

Local 212, and they vigorously opposed any merger. Nonetheless, in May 1998, United Association merged both Local 212 and Local 66 into Local 125.

Prior to the merger, the three local unions each paid contributions into the PPNPF based on the hours their members worked. Local 212 contributed at a rate of $1.00/hour, whereas both Local 66 and Local 125 contributed at a rate of $1.75/hour. After the merger, Defendants reviewed and modified these policies. Initially, Defendants raised Local 212's contribution rate to $1.05/hour and both Locals 66's and 125's rate to $1.95/hour. Then, effective August 1, 1999, Defendants standardized these rates, so that Local 212 also contributed $1.95/hour.

In addition to paying contributions into the PPNPF, Local 212 also operated its own pension fund. Thus, the merger presented Local 212 with a choice: either merge its fund into the PPNPF, or terminate its fund and distribute the proceeds. Ultimately, Local 212 opted to terminate and distribute.

This decision concerned Defendants. Because Local 212 did not merge its pension fund, Defendants feared the PPNPF had incurred additional liabilities – that is, benefits owed to Local 212 members based on the $1.95/hour rate – without acquiring additional assets. As a result, Defendants revised the formula for calculating Local 212's retirement benefits. This revision concerned the contribution rate for its members' "past service."[3] Defendants decided to credit their past service at $1.05/hour, rather than at the increased rate of $1.95/hour. Thus, for Local 212, Defendants applied the $1.95/hour rate only prospectively to future service. In contrast, for Locals 66 and 125, Defendants applied the $1.95/hour rate both retroactively to past service and prospectively to future service.

---

[3]"Past service" means hours Local 212 members worked prior to August 1, 1999, when Defendants raised the contribution rate to $1.95/hour.

Some Plaintiffs appealed Defendants' decision under the PPNPF's administrative review procedure. Defendants denied these appeals on July 14, 2000. No Plaintiff filed a lawsuit for judicial review of this denial.

Thus, Defendants' policy was clear: the contribution rate for Local 212's past service was $1.05/hour. Nonetheless, Defendants incorrectly used the $1.95/hour rate to calculate Plaintiffs' retirement benefits. As a result, Defendants responded to Plaintiffs' benefit inquiries with inflated figures. Some Plaintiffs decided to retire based on these inaccurate figures. Similarly, once Plaintiffs retired, Defendants paid them excess monthly benefits. Each Plaintiff received between $1,232 and $69,540 in total excess benefits, and one Plaintiff received excess payments for more than seven years.

In 2009, Defendants realized the error, notified Plaintiffs, and took corrective action. First, Defendants reduced each Plaintiff's monthly benefit payment to the correct amount. Then, Defendants asked each Plaintiff to reimburse the PPNPF for the previous overpayments. If a Plaintiff could not, Defendants would recoup the overpayments through withholding. Ultimately, Defendants began withholding 25% from each Plaintiff's monthly benefit check. Plaintiffs appealed these actions under the PPNPF's review procedure. Defendants denied Plaintiffs' appeals on September 29, 2010.

Plaintiffs filed the instant lawsuit on February 15, 2011. Plaintiffs allege three counts under ERISA. The district court granted Defendants summary judgment on each count. The district court held that the statute of limitations barred Plaintiffs' claims, and that each claim also failed on its merits. Plaintiffs appeal.

II.

"Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law." *Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1000 (8th Cir. 2013) (citing Fed. R. Civ. P. 56). "We review *de novo* the district court's grant of summary judgment and may affirm the judgment on any basis supported by the record." *Id.*

Plaintiffs allege three ERISA claims. Count One is a claim to recover benefits, under 29 U.S.C. § 1132(a)(1)(B). Count One seeks for Defendants to pay Plaintiffs benefits based on the increased $1.95/hour contribution rate, and it challenges Defendants' decisions to the contrary. Plaintiffs challenge Defendants' initial decision, made in 1999 and 2000, to credit their past service at $1.05/hour. Plaintiffs also challenge Defendants' subsequent decision, made in 2009 and 2010, to correct their benefit payments and to recoup the previous overpayments.

Plaintiffs' first challenge is time-barred. ERISA does not contain its own statute of limitations for a § 1132(a)(1)(B) claim, and thus it borrows the limitations period of the most analogous state-law claim. *Shaw v. McFarland Clinic, P.C.*, 363 F.3d 744, 747 (8th Cir. 2004). Here, that period is Iowa's 10-year statute of limitations for breach of contract. *See id.* at 747-48, 750; Iowa Code § 614.1(5). This period begins to run when the claim for benefits is denied. *Shaw*, 363 F.3d at 747 (citing *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)). Defendants decided to apply the $1.05/hour rate to Plaintiffs' past service on August 1, 1999, and Defendants denied Plaintiffs' appeal of this decision on July 14, 2000. Plaintiffs did not file the instant lawsuit until February 15, 2011, more than ten years later. Therefore, this part of Count One is barred.

Plaintiffs' second challenge also fails, but for a different reason. Plaintiffs argue Defendants had no authority to either correct or recoup the benefit

-5-

overpayments, because the PPNPF plan booklet did not grant them this authority. Plaintiffs rely upon the 2002 version of the plan booklet, arguing that its terms should govern here. This argument is unavailing. The 2002 plan booklet contains broad language granting Defendants discretion to take remedial action on behalf of the PPNPF. Therefore, under its terms, Defendants were entitled to both correct and recoup the overpayments. Accordingly, this part of Count One also fails. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896-97 (8th Cir. 2009).

Count Two is a claim for breach of fiduciary duty, under 29 U.S.C. § 1132(a)(2). Count Two alleges Defendants breached their fiduciary duties by refusing to apply the $1.95/hour rate to Plaintiffs' past service, by miscalculating Plaintiffs' benefits, and by recouping the overpayments from Plaintiffs. It seeks for Defendants to pay benefits based on the $1.95/hour rate.

"ERISA imposes upon fiduciaries twin duties of loyalty and prudence[.]" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (discussing 29 U.S.C. § 1104(a)(1)). A plan participant can enforce these duties by filing a claim under § 1132(a)(2), to recover the relief provided by 29 U.S.C. § 1109. *Id.* at 593. A § 1132(a)(2) plaintiff acts "in a representative capacity on behalf of the plan as a whole," because § 1109 is designed to "protect the entire plan[.]" *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985). Thus, any relief "inures to the benefit of the plan as a whole." *Id.* at 140. As a result, when a defined-benefit pension plan is at issue, § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries[.]" *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).[4]

---

[4]In contrast, when a defined-contribution plan is at issue, a § 1132(a)(2) plaintiff may recover individualized relief. *LaRue*, 552 U.S. at 255-56.

Count Two fails under these principles. The PPNPF is a defined-benefit plan. Thus, § 1132(a)(2) provides relief only for the benefit of the plan as a whole. Here, Plaintiffs do not seek relief to benefit the PPNPF itself. Instead, Plaintiffs seek for Defendants to pay them – and only them – extra retirement benefits. Doing so would take money out of the PPNPF, for the sole benefit of Plaintiffs. Because the PPNPF is a defined-benefit plan, Plaintiffs cannot recover this individualized relief in a § 1132(a)(2) claim.

Count Three is a claim for equitable estoppel, under 29 U.S.C. § 1132(a)(3)(B). Plaintiffs allege Defendants falsely represented in writing the value of their retirement benefits, and then erroneously paid them excess benefits for up to seven years. Plaintiffs allege they relied upon Defendants' calculations when making retirement, financial, and lifestyle decisions. Plaintiffs seek to equitably estop Defendants from reducing their monthly benefit payments to the correct amounts, and from recouping the previous overpayments through withholding.

Count Three fails, because its § 1132(a)(3)(B) claim mirrors Count One's § 1132(a)(1)(B) claim. "Where a plaintiff is provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006) (alterations and citation omitted). This rule applies here: in both their § 1132(a)(1)(B) claim and this § 1132(a)(3)(B) claim, Plaintiffs seek payment based on the $1.95/hour rate and return of the recouped overpayments. Plaintiffs' ability to seek this relief in their § 1132(a)(1)(B) claim forecloses them from also pursuing it in this § 1132(a)(3)(B) claim. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999); *see Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) ("[T]he great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3).") (citing cases).

-7-

III.

We affirm the district court.

_____